UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHELLE J. WHITE,<br><br>        Plaintiff,<br><br>   v.<br><br>FCA US LLC,<br><br>        Defendant. | Case No. 22-cv-00954-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Re: ECF No. 18] |

Plaintiff Michelle White brings this action against Defendant FCA US LLC ("Defendant") arising out of an allegedly defective transmission in her 2016 Jeep Cherokee ("Vehicle"). Plaintiff asserts three violations of the Song-Beverly Act (First, Second, and Third Claims), two claims of fraudulent inducement (Fourth and Fifth Claims), and one claim for fraud in the performance (Sixth Claim). First Amended Complaint ("FAC") ¶¶ 214-320, ECF No. 13. Defendant has moved to dismiss Plaintiff's three fraud claims and to strike her request for punitive damages. ECF No. 18-1 ("Motion").

For the reasons set forth below, the Court DENIES IN PART and GRANTS IN PART Defendant's Motion with LEAVE TO AMEND.

I.  **BACKGROUND**

   A.  **Factual Background**

On July 14, 2016, Plaintiff Michelle White purchased a new 2016 Jeep Cherokee from Stevens Creek Chrysler Jeep Dodge in San Jose, California. FAC ¶ 8. The Vehicle was manufactured by and under the express written warranty of FCA US, LLC. *Id.* ¶¶ 9, 15; *see also id.*, Ex. 1 ("Warranty"). Plaintiff alleges she purchased the Vehicle based on FCA's written and verbal representations of the safety, reliability, and "superior qualities" of the Vehicle. *Id.* ¶¶ 85-

91.  However, the Vehicle arrived with and developed "serious defects and nonconformities," such as transmission, engine, and electrical defects.  *Id.* ¶ 11.  The FAC centers on an alleged transmission defect that is purportedly inherent to the Vehicle's 9-speed automatic transmission ("9HP Automatic Transmission") and present in all of Defendant's vehicles released from 2016 onward.  *Id.* ¶¶ 16, 82.

Per the FAC, Defendant designed the 9HP Automatic Transmission to optimize fuel economy and performance, promising in its Vehicle brochure quick response upon acceleration, "smooth delivery of power between all nine gears," improved efficiencies, and a reduction in "overall noise and vibration."  *Id.* ¶¶ 17, 259.  Plaintiff alleges, however, that the 9HP Automatic Transmission poses an unreasonable safety hazard through "rough, delayed, or sudden shifting or failure to shift; grinding or other loud noises during shifting; harsh engagement of gears; sudden or harsh accelerations/decelerations; sudden loss of power; premature transmission wear; and transmission failure" ("Transmission Defect").  *Id.* ¶ 31.  These nonconformities allegedly "make it difficult to safely change lanes, appropriately accelerate from a stop, merge into traffic, or make turns."  *Id.* ¶ 40.  Plaintiff further alleged that the Vehicle's "unpredictable acceleration" caused at least one rear-end collision.  *Id.* ¶ 274.

Plaintiff returned the Vehicle to Defendant's authorized repair facilities five times from November 26, 2018 to June 22, 2021, putting the Vehicle out of service for at least 70 days.  *Id.* ¶¶ 92-98.  The FAC states that Defendant was unable to "conform the Vehicle to the applicable express warranties after a reasonable number of repair attempts" or within 30 days and has failed to replace or repurchase the Vehicle.  *Id.* ¶¶ 222-23, 246.

In the FAC, Plaintiff alleges three violations of the Song-Beverly Act that are not at issue in the present Motion, as well as three claims for fraud.  Specifically, the FAC alleges that Defendant knew of the Transmission Defect and that it "would substantially impair the use, value, or safety of the Vehicle."  *Id.* ¶ 283.  The FAC cites, *inter alia*, to transmission software updates that acknowledged the Transmission Defect, safety recalls of vehicles with the Transmission Defect, consumer complaints of the Transmission Defect to the National Highway Traffic Safety Administration ("NHTSA") and resulting notice from NHTSA, and Defendant's delays in

releasing vehicles with the 9HP Automatic Transmission to allegedly "address problems with the transmission for symptoms substantially similar, if not identical, to the Transmission Defect." *Id.* ¶¶ 41-81.

Plaintiff contends that she would not have purchased the Vehicle had the Transmission Defect been disclosed to her beforehand. *Id.* ¶¶ 91, 272. The FAC alleges that Plaintiff relied on "written and verbal representations by FCA and its authorized agents" in purchasing the Vehicle, which she would not have purchased had she known about the Transmission Defect. FAC ¶ 91. The written representations consisted of promotional materials for the 2016 Jeep Cherokee that advertised the Vehicle's "best-in-class" features. These include statements that the 9-speed automatic transmission would be "[q]uickly responsive upon acceleration, with smooth delivery of power between all nine gears. . . . Thus, economies are maximized and performance is optimal at all times." *Id.* ¶¶ 85, 259. Additionally, a salesperson at Stevens Creek Chrysler Jeep Dodge verbally represented to Plaintiff that the 2016 Jeep Cherokee was a "reliable vehicle" and "Plaintiff was led to believe the Vehicle would be a safe and reliable choice." *Id.* ¶ 89.

Plaintiff alleges that she suffered both economic and non-economic loss: "out-of-pocket loss, loss of benefit of her bargain, property damage, pain and suffering, emotional distress, exposure to liability, and personal injury," along with potential injury to herself, her passengers, and other vehicles on the road. *Id.* ¶¶ 273, 274. For her fraud claims, Plaintiff also seeks punitive damages. *Id.* ¶¶ 298, 320.

**B.     Procedural History**

Plaintiff initiated this suit on February 16, 2022 and amended her complaint on April 5, 2022. Now before the Court is Defendant's Motion ("Motion") to Dismiss Fraud Claims in Plaintiff's First Amended Complaint ("FAC") and to Strike Plaintiff's Claim for Punitive Damages. ECF No. 18-1. Defendant argues that the Fourth, Fifth, and Sixth Claims should be dismissed because they are barred by the economic loss rule, *id*. at 4-8, and under Federal Rule of Civil Procedure 9(b) for failure to plead with "sufficient particularity," *id*. at 8-9. Defendant argues that Plaintiff's request for punitive damages should be subsequently stricken without the fraud claims, as the Song-Beverly Act does not allow for punitive damages. *Id.* at 8-9. Plaintiff

1  opposes, arguing that the economic loss rule does not bar her fraud claims and alternatively
2  requesting the Court delay any ruling until the California Supreme Court answers a certified
3  question posed to it by the Ninth Circuit in *Rattagan v. Uber Technologies, Inc.,* 19 F.4th 1188,
4  1193 (9th Cir. 2021): "Under California law, are claims for fraudulent concealment exempted
5  from the [ELR]?" *Id.* at 8.  The Court heard oral arguments from both parties on July 28, 2022.

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Furthermore, when a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to state with particularity the circumstances constituting fraud, including the "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  These circumstances must be "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (internal ellipses omitted).

When the Court grants a motion to dismiss, leave ordinarily must be granted unless one or

4

1  more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3)
2  repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and
3  (5) futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital,*
4  *LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

"While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010).  "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted).  "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of N.Y. Mellon*, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone*, 618 F.3d at 973).

## III. DISCUSSION

Defendant moves to dismiss the Fourth, Fifth, and Sixth Claims as being barred by the economic loss rule and for failure to state a fraud claim with particularity under Rule 9(b).  Mot. 1-2.  Furthermore, because these claims are the only ones that permit recovery of punitive damages, Defendant also moves to strike Plaintiff's prayer for punitive damages.  *Id.*

The Fourth and Fifth Claims are characterized as "Fraudulent Inducement" claims, whereas the Sixth Claim is for "Fraud in the Performance of a Contract." FAC ¶¶ 254-319.  The Court will address each type of fraud claim separately.

### A. Fraudulent Inducement

Defendant argues that Plaintiff's fraudulent inducement claims are barred by the economic loss rule, because the FAC only alleges economic losses and those claims do not fall under any recognized exceptions to the economic loss rule. Mot. 6 (citing *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 985-86 (2004)). Defendant additionally asserts that Plaintiff failed to state her fraudulent inducement claims with particularity because she did not "identify with specificity the specific misrepresentation or specific information that she relied upon." Mot. 8.

#### i. Economic Loss Rule

Because the economic loss rule is a substantive legal principle, its application is governed by California law. *See, e.g.*, *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021) (certifying the question of whether the economic loss rule bars fraudulent concealment claims).[1]

The economic loss rule can be described as follows: "Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic losses." *Robinson Helicopter*, 34 Cal. 4th at 988 (internal quotation marks and brackets omitted). "Economic losses" include "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property." *Id.* In application, this rule means that tort damages, such as "damages for mental suffering and emotional distress[,] are generally not recoverable in an action for breach of an ordinary commercial contract in California." *Erlich v. Menezes*, 21 Cal. 4th 543, 558 (1999). "[T]he economic loss rule prevents the law of contract and the law of tort from dissolving into one another." *Robinson Helicopter*, 34 Cal. 4th at 988 (internal brackets omitted").

---

[1] The Court DENIES Plaintiff's request to stay this case pending the California Supreme Court's response in *Rattagan*. Opp. 8. The certified question in *Rattagan* does not specify whether it contemplates claims for fraud in the inducement or fraud in the performance, and the underlying facts in *Rattagan* only appear to apply to the latter. *See Rattagan*, 19 F.4th at 1193. Accordingly, it is unclear that *Rattagan*'s resolution would be dispositive here, where the FAC asserts both.

The California Supreme Court, however, has recognized certain contract cases where tort damages are nonetheless permitted, the most relevant of which are those "where the contract was fraudulently induced." *Id.* at 990 (quoting *Erlich*, 21 Cal. 4th at 552); *see also R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2017 WL 1164296, at *5 (N.D. Cal. Mar. 29, 2017) ("[F]raudulent inducement is a well-recognized exception to the economic loss rule."). This exception stems from the intersection of "two crucial public policy concerns: freedom of contract and abhorrence of fraud." *Rattagan*, 19 F.4th at 1192 (internal quotation marks omitted); *see also Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1238 (1991) ("[N]o public policy is served by permitting a party who never intended to fulfill his obligations to fraudulently induce another to enter into an agreement."). In addition to the exception for fraudulent *inducement*, the California Supreme Court has held that certain claims of fraudulent *performance* of a contract are also excepted from the economic loss rule, specifically those where the performance involved affirmative misrepresentations. *Robinson Helicopter*, 34 Cal. 4th at 990-91 (holding that economic loss rule did not apply where defendant had provided false certificates of conformance).

Here, Defendant argues that Plaintiff's fraud claims, as a collective, do not fall within the narrow exception established by *Robinson Helicopter* and, therefore, her claims are barred by the economic loss rule. Mot. 7. The Court agrees with Defendant that Plaintiff's Fourth and Fifth Claims for fraudulent inducement do not fall under the *Robinson Helicopter* exception, which only addressed fraud in the performance of a contract. 34 Cal. 4th at 984 ("In this case, we decide whether the economic loss rule . . . applies to claims for intentional misrepresentation or fraud in the *performance of a contract*.") (emphasis added). But that distinction misses the point. Fraudulent inducement is a category of fraud that *Robinson Helicopter* did not even address but only acknowledged in passing as a separate standalone exception to the economic loss rule. 34 Cal. 4th at 989-90 ("Tort damages have been permitted in contract cases . . . where the contract was fraudulently induced.") (internal quotation marks omitted); *see also Edwards v. FCA US LLC*, No. 22-CV-01871-WHO, 2022 WL 1814144, at *7 (N.D. Cal. June 2, 2022) ("To the extent that [plaintiff's] 'fraudulent inducement-concealment' claim sounds in inducement, the economic loss

7

rule clearly does not bar his claim."); *Yetter v. Ford Motor Co.*, No. 19-CV-00877-LHK, 2019 WL 3254249, at *7 (N.D. Cal. July 19, 2019) ("Thus, the economic loss rule does not bar Plaintiff's fraud claims, all of which sound in fraudulent inducement.").

Defendant cites frequently to *Hsieh v. FCA US LLC* for the proposition that tort claims "based exclusively on omissions, not affirmative misrepresentations" are in and of themselves precluded from any exception to the economic loss rule. Reply 3 (citing *Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1163 (S.D. Cal. 2020)). This overstates the holding in *Hsieh* in two key respects. First, *Hsieh* only held that omission-based tort claims do not fit within the specific "narrow exception established in *Robinson*"; it did not purport to disqualify omission-based torts from *all* exceptions to the economic loss rule. *Hsieh*, 440 F. Supp. 3d at 1163. Second, like *Robinson Helicopter*, *Hsieh*'s facts primarily involved fraud in the performance of a contract, not the fraudulent inducement claims that Plaintiff asserts here. *Id.* ("Here, all of Plaintiff's tort claims are based on Defendants' failure to fix Plaintiff's vehicle as required by the warranty."). Defendant's reliance on *Hsieh* is accordingly misplaced.

To the extent that Defendant argues the FAC's fraudulent inducement claims should be barred by the economic loss rule because they do not fall within the *Robinson Helicopter* exception, those arguments are unpersuasive. Properly pled, claims for fraudulent inducement fall under their own "well-recognized exception to the economic loss rule." *R Power Biofuels, LLC*, 2017 WL 1164296, at *5. The Court accordingly does not find that the economic loss rule bars Plaintiff's Fourth and Fifth Claims, which assert claims for fraudulent inducement.

### ii.  Rule 9(b)

In addition to their economic loss rule argument, Defendant also asserts that the FAC fails to adequately allege a fraud claim under the heightened pleading standard of Rule 9(b). The Court addresses the Fifth and Fourth Claims in turn.

#### a.  Intentional Misrepresentation – Fifth Claim

Under California law, the elements for a fraudulent inducement claim are, as follows: (1) a misrepresentation, false representation, concealment, or nondisclosure; (2) knowledge of falsity; (3) intent to defraud or induce plaintiff to enter into a contract; (4) justifiable reliance; and (5)

resulting damage. *See Edwards*, 2022 WL 1814144, at \*2 (citing *Lazar v. Superior Ct.,* 12 Cal. 4th 631, 638 (1996)). Put differently, "[a] promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Lazar*, 12 Cal. 4th at 638.

Defendant appears to only dispute the misrepresentation and reliance elements of fraudulent inducement. Specifically, it argues that the FAC fails to "identify with specificity the specific misrepresentation or specific information that [Plaintiff] relied upon," only providing "vague and conclusory allegations that printed marketing materials influenced her decision to purchase the Subject Vehicle." Mot. 8; *see also* Reply 3 ("Plaintiff has not alleged any facts in her First Amended Complaint to support affirmative misrepresentations made by FCA to induce Plaintiff to enter into a contract.").

With respect to the Fifth Claim (Fraudulent Inducement – Intentional Misrepresentation), Defendant's arguments are well taken. This claim appears to rely on Defendant's affirmative representations, which were made through printed marketing materials and verbal representations by the Stevens Creek Chrysler Jeep Dodge salesman. FAC ¶¶ 85-91, 282, 287. The written representations consisted of "best-in-class" advertisements, as well as statements that the 9-speed automatic transmission would be "[q]uickly responsive upon acceleration, with smooth delivery of power between all nine gears. . . . Thus, economies are maximized and performance is optimal at all times." *Id.* ¶¶ 85, 259. The salesperson's identity and statements are not specified in the FAC, which only noted that he or she presented the 2016 Jeep Cherokee as a "reliable vehicle" and "Plaintiff was led to believe the Vehicle would be a safe and reliable choice." *Id.* ¶ 89. On these allegations, the Court agrees with Defendant that the FAC has not alleged the salesperson's affirmative representations with specificity and has not alleged Plaintiff's reasonable reliance on the affirmative "best-in-class" and 9-speed transmission statements in Defendant's marketing materials. *See Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1133 (N.D. Cal. 2013) ("Advertising which merely states in general terms that one product is superior is not actionable. However, misdescriptions of specific or absolute characteristics of a product are actionable.") (internal brackets omitted); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal.

2007) ("Advertisements that amount to 'mere' puffery are not actionable because no reasonable consumer relies on puffery.").

Given Plaintiff's representations during oral arguments that she could provide additional details to support her fraud claims, the Court does not believe that amendment would be futile nor that any of the other *Foman* factors are present. 371 U.S. at 182. Accordingly, the Court will GRANT Defendant's motion to dismiss the Fifth Claim with LEAVE TO AMEND.

b. Concealment – Fourth Claim

With respect to the Fourth Claim (Fraudulent Inducement – Concealment), Defendant's arguments are less persuasive. On this claim, Plaintiff alleges that Defendant concealed the Transmission Defect from the public, including Plaintiff. FAC ¶¶ 259-263. This claim does not, as the Reply asserts, "rel[y] upon FCA making *affirmative misrepresentations*, which [the FAC] has not alleged, and cannot allege." Reply 3 (emphasis added).

Although "averments of fraud must be accompanied by 'the who what when where, and how' of the misconduct charged, [] claims based on an omission can succeed without the same level of specificity required by a normal fraud claim." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (internal quotation marks and brackets omitted). Fraud by omission requires slightly different elements from fraud by affirmative representations: "(1) the concealment or suppression of material fact, (2) a duty to disclose the fact to the plaintiff, (3) intentional concealment with intent to defraud, (4) justifiable reliance, and (5) resulting damages." *Edwards*, 2022 WL 1814144, at *3 (quoting *Lewis v. Google LLC*, 851 F. App'x 723, 725 (9th Cir.), cert. denied, 142 S. Ct. 434 (2021)). Federal courts applying California law have also found a duty on manufacturers to disclose defects that present an "unreasonable safety hazard." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141-43 (9th Cir. 2012) (collecting cases).

Here, neither the Motion nor the Reply specifically addresses Plaintiff's fraudulent concealment claim or argues its deficiency; instead, they only challenge the FAC's lack of specificity as to Defendant's affirmative misrepresentations. *See* Mot. 8; Reply 3-4. As other courts have noted, this argument has limited relevance to an omission-based claim like concealment. *See, e.g.*, *MacDonald*, 37 F. Supp. 3d at 1096 (noting that "a plaintiff alleging an

10

omission-based fraud will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim.").

Upon review of the pleading, it appears to the Court that the FAC does satisfy the pleading requirements of Rule 9(b). Plaintiffs allege the "who" (Defendant FCA LLC, *see generally* FAC ¶¶ 255-278), the "what" (concealing a defect in Defendant's 9HP transmission control software that presented a safety hazard, thereby creating a duty to disclose, FAC ¶¶ 26, 31-36, 40, 259-263), the "when" (prior to Plaintiff's purchase of the Vehicle in July 2016, FAC ¶¶ 8, 85-91), the "where" (the written advertisements and salespeople representations Plaintiff consulted before purchase; FAC ¶¶ 85, 89), the "why" (to induce reasonable consumers to purchase vehicles at market prices, FAC ¶ 266), and the "how" (by intentionally failing to disclose the defect to consumers and Defendant's authorized repair facilities, FAC ¶ 258). Other courts in this circuit have applied similar analyses in other fraudulent concealment cases, including in a recent opinion from Judge Orrick where he found similar allegations regarding Jeep Cherokees defects that caused stalling or sudden loss of power to be sufficient under Rule 9(b). *Edwards*, 2022 WL 1814144, at *6; *see also, e.g.*, *Bryde v. Gen. Motors, LLC*, No. 16-CV-02421-WHO, 2016 WL 6804584, at *14 (N.D. Cal. Nov. 17, 2016); *MacDonald*, 37 F. Supp. 3d at 1096-97; *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1326-28 (C.D. Cal. 2013); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1190-91 (C.D. Cal. 2010).

Given the inherent limitations of an omission claim, the Court finds that Plaintiff has adequately alleged a claim for fraudulent inducement by concealment. Plaintiff's Fourth Claim satisfies Rule 9(b)'s pleading requirements and is not barred by the economic loss rule. Therefore, the Court DENIES Defendant's motion to dismiss the Fourth Claim.

### B.     Fraudulent Performance of a Contract

Defendant's arguments to dismiss the FAC's Sixth Claim (Fraud in the Performance of a Contract – Intentional Misrepresentation) are largely identical to those against the Fourth and Fifth Claims, *i.e.*, the claim is barred by the economic loss rule and the allegations fail to meet the pleading standards under Rule 9(b). *See generally* Mot.; Reply.

11

### i. Economic Loss Rule

The Court notes that Defendant's efforts to distinguish this case from *Robinson Helicopter* are more relevant here, as both Plaintiff's Sixth Claim and the claim in *Robinson Helicopter* involved fraud in the performance of a contract. 34 Cal. 4th at 984. However, Plaintiff's claim falls outside the scope of the economic loss rule for a separate reason: Plaintiff has alleged a physical injury independent of the economic loss of her Vehicle. FAC ¶¶ 95, 317.

The FAC alleges that, on or about March 8, 2021, she presented her Vehicle for repairs to Defendant's authorized repair facility the Boardwalk Chrysler Dodge Jeep Ram. *Id.* ¶ 95. The FAC further alleges that the Vehicle's transmission defects had "caus[ed] the Vehicle to lunge forward without warning, leading to an accident where the Vehicle rear-ended another vehicle while stopped at a stoplight." *Id.* Upon investigation, the technicians had found that the Transmission Control Module ("TCM") was broken. *Id.* Plaintiff also alleged that this accident caused her "personal injury, increased insurance premiums, and property damage," as well as exposing her to liability arising from this accident. *Id.* ¶¶ 274, 317. Because Plaintiff alleged personal injury to herself and exposure to liability (*i.e.*, losses that are not purely economic), Plaintiff's fraudulent performance claim is not barred by the economic loss rule. *See Robinson Helicopter*, 34 Cal. 4th at 989-90 ("Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury. . . ."), 993 (clarifying that the exception is limited to affirmative misrepresentations that "expose a plaintiff to liability for personal damages").

Defendant did not address this fact in its briefing but argued at the hearing that any damages arising from the accident are necessarily related to the same property that is the subject of the contract (*i.e.*, the Vehicle) and arose from the same alleged conduct from Defendant. These observations are ultimately irrelevant to the application of the economic loss rule—Plaintiff has sufficiently avoided the bar by alleging a physical injury, "above and beyond a broken contractual promise." *Robinson Helicopter*, 34 Cal. 4th at 988; *see also S. California Gas Leak Cases*, 7 Cal. 5th 391, 414 (2019) ("The courthouse doors are open for people who experience slight physical injury — yet closed to others who suffer devastating purely economic losses.").

Accordingly, the Court finds that Plaintiff's Sixth Claim is not barred by the economic loss

rule because the FAC alleges non-economic losses.

### ii. Rule 9(b)

As already noted, Defendant does not present a specific argument addressing fraudulent performance of a contract, instead only arguing collectively to dismiss the Fourth, Fifth, and Sixth Claims on the basis that Plaintiff failed to identify the specific misrepresentation she relied on in purchasing the Vehicle. Mot. 8.

The California Supreme Court has identified three circumstances where breaches of contract—as opposed to the inducement to form a contract—may warrant tort damages: "(1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages." *Robinson Helicopter*, 34 Cal. 4th at 990 (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 553–54 (1999)). In other words, a breach of contract is only tortious when some independent tort duty is violated in addition to the breach. *See id.*

Here, Plaintiff's Sixth Claim appears to be predicated on Defendant's performance of the express warranty contract by "knowingly and intentionally failing to repair or eliminate all defects in the Vehicle, including the Transmission Defect." FAC ¶ 315. The FAC, however, does not allege any specific misrepresentations made to Plaintiff in association with the allegedly failed repairs. The FAC does reference five repair orders describing technician repair activity from instances when Plaintiff presented her Vehicle to an authorized repair facility. FAC ¶¶ 92-96. However, Plaintiff does not specifically allege that Defendant or the technicians made any misrepresentation to her regarding these repairs, which is a required element of fraud. *See supra* at Section III(A)(ii) (citing *Edwards*, 2022 WL 1814144, at *2). The FAC does not, for example, allege that Defendant or a technician informed Plaintiff that the Vehicle was free of the Transmission Defect after a particular repair, nor does it allege that the repair orders somehow misrepresented the technicians' actual actions or repairs.

The Court notes that the FAC also cites frequently to representations made in the Warranty

agreement itself to support her claim for fraud in the performance. FAC ¶¶ 301, 302, 306, 308-09, 311. To the extent Plaintiff relies on statements made in the Warranty as the basis for her fraudulent performance claim, the FAC does not state which specific statements in the Warranty are allegedly fraudulent. Moreover, without a separate misrepresentation that is independent of the contract, the warranty terms cannot themselves give rise to a claim for fraudulent performance or breach. *See Robinson Helicopter*, 34 Cal. 4th at 990 ("[T]he duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm."); *see also Oracle USA, Inc. v. XL Glob. Servs., Inc.*, 2009 WL 2084154, at *7 (N.D. Cal. July 13, 2009) ("Virtually any time a contract has been breached, the party bringing suit can allege that the breaching party never intended to meet its obligations.").

Accordingly, to the extent Plaintiff alleges that Defendant fraudulently performed its obligations under the Warranty, the Court finds that she has not stated those circumstances with sufficient particularity to "give [Defendant] notice of the particular misconduct." *Vess*, 317 F.3d at 1106. Because amendment may conceivably yield additional factual allegations that can provide the predicate for Plaintiff's fraudulent performance claim, the Court will GRANT Defendant's motion to dismiss with LEAVE TO AMEND.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion to dismiss and to strike is GRANTED IN PART and DENIED IN PART, as follows:

1. The motion to dismiss is DENIED as to the FAC's Fourth Claim.
2. The motion to dismiss is GRANTED with LEAVE TO AMEND as to the FAC's Fifth and Sixth Claims. Any amended pleading shall be filed within 21 days of this order.
3. The motion to strike the FAC's request for punitive damages is DENIED.

Dated: August 16, 2022

/s/ Beth Labson Freeman
BETH LABSON FREEMAN
United States District Judge